IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRENDA BAINES,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

: Civil Action No. 10-006-LPS

---

Gary Linarducci, Esquire of LINARDUCCI & BUTLER, New Castle, Delaware.

Attorney for Plaintiff.

Charles M. Oberly, Esquire, United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel and Eda Giusti, Esquire, Assistant Regional Counsel, of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

February 22, 2011
Wilmington, Delaware

**Stark, District Judge:**

## I. INTRODUCTION

Plaintiff Brenda Baines ("Baines") appeals from a decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383f. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Baines and the Commissioner. (D.I. 8, 10) Baines asks this Court to direct an award of benefits in her favor or, alternatively, to reverse and remand the Commissioner's decision. (D.I. 8) The Commissioner requests that this Court affirm his decision. (D.I. 10) For the reasons set forth below, Baines' motion will be granted, and the Commissioner's motion will be denied. The decision of the Commissioner dated March 3, 2009 will be reversed, and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

## II. BACKGROUND

### A. Procedural History

Baines filed her claim for DIB and SSI on January 26, 2007, alleging disability since June 15, 2006, due to high blood pressure, migraine headaches, blackouts, dizzy spells, tumors, tendinitis, a separated rotator cuff, anemia, vertigo, and irregular heart activity. (D.I. 5 ("Transcript" and hereinafter "Tr.") at 8, 122-33, 164) Baines' application was denied initially and on reconsideration at the pre-hearing administrative levels. (Tr. 88-92, 96-101) Thereafter,

1

Baines requested a hearing before an administrative law judge (hereinafter "ALJ"). A hearing was held on August 5, 2008. (Tr. 24-57) The ALJ issued a decision dated February 26, 2009, concluding that Baines was not disabled and denying benefits. (Tr. 6-19) Baines timely requested review of the ALJ's decision by the Appeals Council, and the Appeals Council denied the request for review without substantive explanation. (Tr. 1-5) Thus, the March 3, 2009 decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On January 5, 2010, Baines filed a complaint seeking judicial review of the ALJ's March 3, 2009 decision. (D.I. 1) On June 28, 2010, Baines moved for summary judgment. (D.I. 8) In response, the Commissioner filed a cross-motion for summary judgment, and a combined opening brief in support of his cross-motion and opposition to Baines' motion requesting the Court to affirm the A.L.J.'s decision. (D.I. 10, 11) Baines has filed a reply brief. (D.I. 12) Accordingly, the Court will proceed to address the merits of Baines' claims.

### B. Factual Background

#### 1. Baines' Medical History, Treatment, And Condition

At the time the ALJ issued his decision, Baines was forty-six years old and defined as a younger individual under 20 C.F.R. §§ 404.1563(c), 416.963. (Tr. 122) Baines has a high school education and past work experience as a mail room clerk, secretary, stenographer, customer service representative for Ticketmaster, and possibly as a telemarketer. (Tr. 32-35, 136, 147-149)

Baines treated with Sung Ho Bae, M.D., a neurologist, for complaints of vertigo, dizziness, frequent tripping, and occasional migraine headaches. (Tr. 232) Baines' examination

was essentially normal, and an MRI of Baines' brain was also normal. (Tr. 234, 221) During follow-up examinations, Dr. Bae reported no obvious or genuine organic weakness in Baines' motor examination, and no evidence of focal neurological lesion. (Tr. 287) Dr. Bae advised Baines to exercise regularly and lose weight. (Tr. 298) Because Dr. Bae believed some of Baines' symptomology may be related to her medications, he also suggested eliminating or reducing certain prescriptions. (Tr. 298)

At Dr. Bae's suggestion, Baines also underwent two sleep studies. Both showed no significant sleep disorder, but suggested that the possibility of narcolepsy be considered. (Tr. 234, 298)

Baines' family physician, Pasquale Fucci, M.D., referred Baines to two orthopedic surgeons, Mohammad Kamali, M.D. and J. Douglas Patterson, M.D., for treatment of left shoulder pain and left arm pain. In February 2007, Dr. Kamali diagnosed Baines with left shoulder impingement syndrome, gave her a steroid injection, and recommended exercise. In April 2007, Baines returned to Dr. Kamali for difficulties with her left arm and leg due to a stroke she suffered on March 10, 2007. Dr. Kamali suggested that Baines see a neurologist. (Tr. 345)

In June 2007, Baines treated with Dr. Patterson. He diagnosed adhesive capsulitis of the right shoulder and recommended physical therapy and an MRI to rule out a rotator cuff tear. (Tr. 343) A July 2007 MRI of Baines' right shoulder confirmed Dr. Patterson's impression of adhesive capsulitis and showed no significant rotator cuff pathology. (Tr. 342, 347) An August 2007 MRI showed a small (10-20%) partial thickness undersurface tear of the supraspinatus with some adjacent tendinopathy and mild degenerative changes. Dr. Patterson advised Baines that

most surgeons would not repair a 10-20% partial thickness tear, but that surgery for either a shoulder release or closed manipulation could be considered. (Tr. 611)

At the referral of Dr. Patterson, Baines saw Joseph J. Mesa, M.D., another orthopedic surgeon. Dr. Mesa performed a manipulation of Baines' right shoulder in October 2007, in order to achieve full range of motion. (Tr. 403, 447) Dr. Mesa referred Baines to physical therapy with Daniel A. Elkins, who noted that Baines "met most goals." Baines was discharged with a home exercise program.

In April 2008, Dr. Mesa referred Baines for an MRI of the cervical spine. Baines' MRI findings were limited due to motion. However, the MRI indicated multi-level significant spondylotic degenerative change, disc bulge resulting in a variable amount of spinal stenosis and multi-level foramina narrowing. (Tr. 372, 459)

Shortly thereafter, Baines treated with Philip S. Kim, M.D., for neck and shoulder complaints. (Tr. 462) Dr. Kim noted that Baines was not employed, but that she did a lot of housework, which exacerbated her condition. Dr. Kim recommended physical therapy and cervical epidural steroid injections. (Tr. 463) An MRI of Baines' lumbar spine was normal. (Tr. 370) Dr. Kim treated Baines with two cervical epidural injections and referred her back to Dr. Mesa for re-evaluation of the possibility of shoulder impingement or rotator cuff tear.

Two sets of EMG and nerve conduction studies were also performed on Baines' left hand in November 2007 and then in March 2008. These studies were consistent in revealing mild carpal tunnel syndrome. (Tr. 445)

Baines' medical records contain four emergency room visits. The first visit was in July 2007, when Baines presented to St. Francis Hospital emergency room for chest pain. Baines was

advised that there was no evidence of a dangerous medical condition, although the cause of her chest pain was unclear. (Tr. 377-78) The second visit was in February 2008, when Baines presented to St. Francis Hospital emergency room for left arm paralysis. Dr. Fucci attended Baines during that visit and assessed "transient ischemic attack versus cerebrovascular accident versus psychosomatic issues." (Tr. 414) Dr. Fucci wrote:

> I am able to get the case with ER physician and really this is a quizzing question. There are really not any acute and impressive signs of cerebrovascular accident, but the patient of course does have a deficit either perceived or real and for that reason we are going to admit her to the hospital into the floor and Neurology to work up. At the admission of her own husband, it seems that these symptoms are brought up to her by stress. Apparently, the woman was baby-sitting several younger relatives and her husband seems to believe that stress does cause her to be overwhelmed and somatizing some issues. . . . [W]e will follow up with the consultation with Neurology as well as consultation with Psychiatry. . . .

(Tr. 414) Baines' neurology tests were negative, and Dr. Fucci noted that Baines' condition "actually improved tremendously" with anxiety medication. (Tr. 410) Dr. Fucci discharged Baines two days later with diagnoses of neuropathy and brachial plexus neuropathy on the left arm. Transient ischemic attack was ruled out. (Tr. 410) Dr. Fucci recommended physical therapy for the brachial plexus syndrome. (Tr. 410) Baines' third visit to St. Francis Hospital emergency room was in July 2008, for leg pain. (Tr. 476) Baines was diagnosed with leg pain, non-specific. (Tr. 476) Baines' fourth emergency room visit was in June 2008, at New Jersey's Cooper University Hospital. (Tr. 680) Baines was visiting another patient at the hospital and then presented herself in the emergency room for syncope complaints. Baines was diagnosed with syncope due to dehydration and opiate intake. (Tr. 694)

## 2. Medical Source Opinions

Baines' claims for SSI and DIB were reviewed by two state agency physicians in May 2007. Both opined that Baines had the residual functional capacity to perform light work with occasional postural maneuvers, except never balancing and only limited reaching, and avoiding concentrated exposure to vibration and hazards. (Tr. 300-05, 326)

In August 2007, Dr. Fucci completed a Residual Functional Capacity Evaluation of Baines. Dr. Fucci opined that, during an eight hour day, Baines could lift/carry ten pounds frequently, stand/walk one to two hours at a time and four to six hours total, and sit two to six hours at a time and four to six hours total. He further opined that Baines could only perform sedentary work for a total of twenty hours per week. (Tr. 373-75)

In July 2008, Daniel A. Elkins, Baines' physical therapist, also completed a Residual Functional Capacity Evaluation. Mr. Elkins opined that Baines could lift/carry ten pounds frequently and twenty pounds occasionally. Mr. Elkins further opined that, in an eight hour day, Baines could stand/walk for only ten to twenty minutes at a time and one-half hour to two hours total and could only sit for fifteen minutes at a time and two hours total. (Tr. 655-57)

In August 2008, Baines was evaluated by John E. Hocutt, Jr., M.D. for purposes of reviewing Mr. Elkins's Residual Functional Capacity Evaluation. Dr. Hocutt endorsed Mr. Elkins' conclusions. (Tr. 657)

## 3. The Administrative Hearing

A hearing was held before the ALJ on August 5, 2008. (Tr. 27-79) Baines was represented by counsel and testified at the hearing. In addition, a vocational expert testified.

6

### a. Baines' testimony

At the hearing Baines testified that she suffers from left side numbness, weakness, and pain due to a mini stroke. (Tr. 41) She stated that she has arthritis throughout her body and in her spine, frozen shoulders, migraine headaches, cataracts, and high blood pressure that is sometimes controlled. (Tr. 41, 66) Baines testified that she had her right arm successfully manipulated "for the most part," and was planning to undergo a left arm manipulation and possibly back surgery. (Tr. 42, 45) Baines testified that she takes 13 different medications for her conditions, that she suffers from memory loss, dizziness and nausea due to the medications, and has had to have several injections at the hospital to relieve pain and the "locking up" of her legs and/or arms. (Tr. 47-50, 64)

Baines also testified that she takes Zoloft for depression and Xanax for anxiety and that she treated with a psychiatrist or psychologist only once when she was in the hospital. Since that time, Dr. Fucci has managed her anxiety and depression medications and she does not regularly treat with a psychiatrist or psychologist. (Tr. 54, 62) Baines testified that she does do some housework, but "[i]t's not done like it's supposed to be done." (Tr. 58) She also testified that her sisters comb her hair and she needs help bathing and grocery shopping. (Tr. 59) She has a driver's license, but hasn't driven since January 2008, because of the "locking up" of her left arm. (Tr. 60)

### b. Vocational expert's testimony

Following Baines' testimony, the ALJ consulted a vocational expert, Jan Howard Reed. (Tr. 69) Ms. Reed classified Baines' past work of secretary as skilled and sedentary, and her past work as a customer service representative, telephone operator, stenographer, and telemarketer as

7

semi-skilled and sedentary. (Tr. 69-70) Ms. Reed further testified that Baines' past work of mail room clerk is classified as light and unskilled. (Tr. 69-70) Baines' transferable skills include knowledge of office machines, office procedures, record keeping and customer service. (Tr. 70)

The ALJ then asked the vocational expert to consider a hypothetical person who is 43 years old at the date of onset with a 12th grade education and past relevant work as indicated, who is left-handed by nature and is suffering from various ailments, including high blood pressure that is fairly well controlled. The person also suffers from right and left rotator cuff problems, the effects of a TIA or a stroke in 2006, some depression but no regular mental health treatment, neuropathy, vertigo, headaches, dizziness, and nausea, some of which is relieved by medication and some of which is caused by medication. The ALJ further limited this hypothetical claimant to low-stress, low concentration, low-memory jobs, lifting ten pounds frequently and twenty pounds on occasion, and sitting and standing for no more than an hour at a time on an alternate basis. The hypothetical claimant must also avoid heights and hazardous machinery due to her dizziness, temperature and humidity extremes, and this person cannot climb, balance, stoop, or reach overhead. (Tr. 70-71) In general, the ALJ indicated that he was looking for jobs that can be performed with one arm, with minimal assistance from the other arm, and infrequent neck turning due to shoulder problems. Other than these limitations, the ALJ suggested that the hypothetical claimant could perform job activities that were sedentary in nature. (Tr. 70-71)

In response, the vocational expert testified that such a person could perform the following jobs at the light exertional level: (1) mail room clerk, with 800 jobs locally and 90,000 jobs nationally; (2) unarmed security guard, with 800 jobs locally and 90,000 jobs nationally; and

(3) hostess, with 1,000 jobs locally and 200,000 jobs nationally. At the sedentary level, the vocational expert identified the following positions: (1) sedentary security guard, with 300 jobs locally and 70,000 jobs nationally; (2) information clerk, with 350 jobs locally and 7,000 jobs nationally; and (3) order clerk, with 350 jobs locally and 9,000 jobs nationally. (Tr. 72-73) The vocational expert further testified that if the claimant's testimony was fully credited, she would not be able to perform any work in the national economy. (Tr. 74)

### 3. The ALJ's Findings

On March 3, 2009, the ALJ issued the following findings:[1]

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since June 15, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Bilateral Shoulder Adhesive Capsulitis and persistent left upper extremity weakness status post Transient Ischemic Attacks (TIA) (20 C.F.R. 404.1521 *et seq.* and 416.921 *et. seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as that term is defined in 20 CFR 404.1567(b) and 416.967(b); however, due to the combination of her severe impairments, she is limited to no more than occasional pushing, pulling, reaching, handling, fingering, and feeling maneuvers with her left upper extremity. The claimant cannot

---

[1] The ALJ's factual findings have been extracted from his decision, which interspersed factual findings and commentary. (Tr. 8-19)

9

engage in tasks which require frequent neck turning and/or prolonged stooping, and she must avoid working in temperature or humidity extremes. Finally, due to her pain and the side-effects of her several medications, the claimant cannot climb to or work at heights or with hazardous machinery, and she is limited to simple, routine, non production pace unskilled light work.

6. The claimant is capable of performing her past relevant work as a Mail Room Clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from June 15, 2006 through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. at 8-19)

## III. LEGAL STANDARDS

### A. Motion For Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the Court must "review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). If the Court is able to determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (internal quotation marks omitted).

### B. Review Of The ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383 (c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence –

particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F.3d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see*

12

*also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i), 416.920(a)(4) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *See* 20 C.F.R.

§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

### B. Whether The ALJ's Decision Is Supported By Substantial Evidence

By her Motion, Baines contends that the ALJ's decision is not supported by substantial evidence. Specifically, Baines contends that the ALJ erred in concluding that Baines' position in the mail room at DuPont during the early part of her employment history qualified as past relevant work under the Social Security Regulations, because it fell outside the 15 year window. In the alternative, Baines contends that she could not perform the duties of the mail room clerk

position as it required her to lift more than 50 pounds and the ALJ limited Baines to lifting 20 pounds. In addition, Baines contends that the ALJ failed to include all of Baines' established limitations in the hypothetical question to the vocational expert and failed to give appropriate deference to the opinions of Baines' treating physicians.

The Social Security Regulations concerning past relevant work provide:

> We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier). A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15-year guide is intended to insure that remote work experience is not currently applied.

20 C.F.R.§§ 404.1565(a); 416.965(a).

In this case, the Agency's earning records show that Baines last worked for DuPont in any capacity in 1993. The ALJ's decision was issued in 2009. Therefore, Baines' work at DuPont fell outside the 15-year window established by the Agency for purposes of identifying a claimant's past relevant work. *See* SSR 82-62, 1982 WL 31386, at *1 (stating that 15-year window is calculated from date of adjudication). Defendant relies on Baines' testimony that she worked at DuPont until 1994, to suggest that her mail room clerk position was held within the fifteen year window. However, Baines' testimony was that her career at DuPont spanned from 1984 until 1994, and that she "went from mail room to stenographer to secretary all in that time frame." (Tr. 35) The ALJ did not ask Baines to provide more specifics about when she worked in the mail room; Baines' testimony implies that her time in the mail room was at the earlier stages of her career, rather than the later stages. Although the Agency's earning records for

Baines contradict Baines' hearing testimony that she last worked for DuPont in 1994, the Court has no reason to doubt the accuracy of the Agency's records. Because the documentary evidence establishes that Baines did not hold any position at DuPont within the 15-year time frame required by the Social Security Regulations for establishing past relevant work, the Court concludes that the ALJ erred in concluding that the mail room position held by Baines constituted past relevant work.

Defendant contends that the ALJ's decision should be affirmed because, "even assuming for the sake of argument that Baines' work as a mail room [clerk] falls outside of the fifteen-year guideline, the vocational expert also testified that there was other representative light and sedentary work Baines could perform," including the light positions of unarmed security guard and hostess, and the sedentary positions of security guard and information clerk. (D.I. 11 at 15) However, the ALJ did not make any findings with respect to the VE's testimony regarding these additional positions and rested his entire decision on Baines' ability to return to her past relevant work as a mail room clerk. It is well-established that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 1989) (applying *Chenery* to Social Security cases).

In this case, the ALJ halted his analysis of Baines' claims at step four of the sequential evaluation. Erroneous step four findings can be rendered harmless by the identification of other work consistent with a plaintiff's RFC at step five; however, the ALJ never completed the alternative analysis by making the requisite findings regarding the vocational expert's testimony and its potential application to Baines. The Court cannot independently perform the step five

analysis that would have been undertaken by the ALJ in the first instance but for his error at step four. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) ("[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five."); *Davis v. Astrue*, 2008 WL 852451, at *8 (D.N.J. Mar. 28, 2008) (concluding that ALJ erred at step four in finding that plaintiff could return to work as switchboard operator – because it was not clear that plaintiff worked in that position for more than 30 days as required by regulations – and remanding for further proceedings, including possibility of step five analysis by ALJ); *Bell v. Barnhart*, 2002 WL 31178223, at *2 (D. Kan. Sept.30, 2002) (holding that Commissioner should have opportunity to perform step five analysis in first instance).

In addition, the Court concludes that errors exist in the hypothetical question posed to the vocational expert that bear directly on any findings that may be made from the vocational expert's testimony at step five. "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Without making any conclusions regarding the adequacy of the ALJ's RFC findings, it is evident to the Court that the ALJ did not include, in his hypothetical question to the vocational expert, the limitations required by the ALJ's own findings. Specifically, the ALJ found that Baines could do only "occasional pushing, pulling, reaching, handling, fingering, and feeling maneuvers with her left upper extremity." (Tr. 15) However, the ALJ's hypothetical question to the vocational expert included no reference to these limitations and no limitations to the left upper-extremity. Rather, the ALJ only stated to the vocational expert to "avoid overhead reaching, and generally look[] for jobs that can be performed with one arm with minimal assist

from the other." (Tr. 71) In addition to potential problems concerning the meaning of "minimal" compared with "occasional," the Court concludes that errors exist in the ALJ's failure to specify to the vocational expert that the dominant left arm of the hypothetical claimant was affected, as well as the failure to specify limitations that affected the hand, as well as the arm, including such hand related tasks as fingering, handling, and feeling maneuvers. For this reason, as well, the Court concludes that this matter must be remanded to the Commissioner for further findings and/or proceedings.

## V. CONCLUSION

For the reasons discussed, the Court will grant Baines' Motion For Summary Judgment and deny the Commissioner's Motion For Summary Judgment. The decision of the Commissioner, dated March 3, 2009, will be reversed, and this matter will be remanded to the Commissioner for further findings and/or proceedings consistent with this Memorandum Opinion.

An appropriate Order will be entered.